ALBERT F. PETERSON ET AL., APPELLANTS, V. JULIA R. KINNEY ET AL., APPELLEES.

FILED MARCH 6, 1925. No. 22985.

1. **Principal and Surety:** LIABILITY OF SURETIES. Where the liabilities of sureties in a judgment are all equal, and where the circumstances are such that one surety is not surety for another, the judgment creditor is at liberty to collect his judgment from any of the judgment debtors he may choose, and a court of equity will not ordinarily direct against whom he shall first proceed.

2. **Evidence** examined, and *held* to support the judgment.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*George W. Ayres* and *Peterson & Devoe,* for appellants.

*Burkett, Wilson, Brown & Wilson* and *McCandless & McGuire, contra.*

Heard before DAY, GOOD and EVANS, JJ., REDICK and SHEPHERD, District Judges.

DAY, J.

This action, as originally brought by Albert F. Peterson, sought an injunction against Julia R. Kinney and Ira Miller restraining them from selling, under execution, certain lots owned by the plaintiff. While the court did not in terms deny the injunction, its findings and judgment in favor of Julia R. Kinney granting to her the relief prayed in her cross-petition, in effect, amounted to a denial of the injunction. From this judgment Albert F. Peterson and Emma Peterson, his wife, have appealed.

Ira F. Miller is the sheriff of Lancaster county and has no personal interest in the controversy.

A brief statement of the facts will serve to make clear the points involved in this appeal.

On September 25, 1919, the Community Service Corporation borrowed $3,000 from the First National Bank of Lincoln, and gave a note therefor signed by the Community

Service Corporation, by S. A. Kinney, its president, and also by S. A. Kinney, personally. At the time the money was borrowed, Kinney agreed with the bank that the note would also be signed by Albert F. Peterson. The bank gave credit on its books to the Community Service Corporation for the amount borrowed, and some two weeks later Peterson appeared at the bank and signed the note. The note was not paid when due and suit was brought thereon by the bank against all of the signers. Kinney made default, and on May 20, 1920, a judgment was entered against him for the amount due and the cause continued as to the other defendants. On May 24, 1920, a transcript of the judgment was filed in Gage county.

On September 25, 1920, judgment was rendered against the other defendants, reciting that it was against the Community Service Corporation, as principal, and Peterson, as surety. There is no recital concerning the relationship as between Kinney and Peterson. Later, an execution was issued in Gage county and levied upon certain lands in that county belonging to Kinney. The lands were sold, but the sale was never confirmed. Afterward, on February 4, 1921, Kinney died, leaving his widow, Julia R. Kinney, as his sole legatee, who was appointed administratrix of his estate. Julia R. Kinney then bought the judgments in her individual right, paid for them with her money, and took an assignment thereof from the bank in her individual name. She then dismissed the execution levied upon the Gage county lands of her deceased husband, and ordered an execution to be issued in Lancaster county against the Community Service Corporation and Albert F. Peterson. No property of the Community Service Corporation upon which to make a levy was found, and the execution was thereupon levied upon certain lots belonging to Peterson. The present action was brought to enjoin the sale under this execution. Julia R. Kinney filed an answer and cross-petition praying that the judgment be decreed a lien upon the Peterson lots, and for other equitable relief, and also

asking that Emma Peterson, the wife of Albert F. Peter-son, be made a party to the action.

It seems perfectly clear that Peterson had no greater right or equity against Julia R. Kinney than he would have had against the bank if the assignment had not been made. It is also clear that she acquired all the rights possessed by her assignor.

If the bank could have withdrawn the levy of the execution against Kinney and ordered an execution against the property of Peterson, then Mrs. Kinney, the assignee of the judgment, could do the same. The law is well settled that, when a judgment creditor has obtained a valid lien upon the property of the principal judgment debtor, he has no right to release such property to the detriment of another defendant who is merely a surety, when at the time the judgment creditor so acts he knows that the relation of suretyship exists.

The rule is equally well established that, when the liabilities of sureties in a judgment are all equal, and when the relations between them are such that one is not surety for the other, the judgment creditor is at liberty to collect his judgment from either of the sureties, and a court of equity will not assume to direct against whom he should first proceed. *Minick v. Brock,* 41 Neb. 512.

It is argued by the appellants that Kinney was the principal, or at least one of them, in borrowing the money from the bank, and that Peterson was surety. The testimony shows that, when the loan was made by the bank, the proceeds thereof were passed to the credit of the Community Service Corporation and checked out by that corporation by checks drawn by it and signed by Kinney, as president. It is true that some of these checks were payable to Kinney, but that circumstance would not necessarily establish the fact that Kinney was the principal debtor. The vice-president of the bank, who negotiated the loan, testified that the bank recognized all the signers as joint makers; that it made no distinction between principal debtor and sure-

Peterson v. Kinney.

ties. This testimony must be regarded as a mere conclusion of the witness. While the testimony on this phase of the case is such that different inferences might be drawn, we are quite convinced from the record that, so far as the bank was concerned, the Community Service Corporation was the principal debtor, and that Kinney and Peterson were co-sureties. The theory is also advanced that, as between Kinney and Peterson, Peterson was his surety. The evidence fails to sustain this theory. If Peterson was surety for Kinney, and desired to have that question adjudicated, it would seem that the proper time to have presented it was in the original action. This is one of the circumstances to be considered. While we think the bank was charged with notice that both Kinney and Peterson were sureties, the record fails to show that the bank or Mrs. Kinney, as assignee, ever knew of the alleged fact that Peterson was surety for Kinney. Upon the entire record, viewed from any standpoint, it seems clear that the relationship between Kinney and Peterson was that of co-sureties. Under the facts we think that Julia R. Kinney had the legal right to release the execution in Gage county levied upon the lands of her deceased husband, and to collect the judgment from Peterson.

Upon the trial the court entered a judgment in favor of Julia R. Kinney and made it a lien upon the Peterson property for one-half of the debt. This was done upon the suggestion of her counsel that, in view of the fact that she was the sole legatee of her husband, and inasmuch as Peterson, if compelled to pay the whole debt, would have the right of contribution against the estate of A. S. Kinney for one-half of the amount, it was no more than equitable that her claim be abated one-half.

We see no valid objection to the decree. Other questions are argued in appellants' brief which we have considered, but do not regard them of controlling importance. The judgment is

AFFIRMED.

Note—See Principal and Surety, 32 Cyc. 143.